[Cite as *State v. Stroud*, 2018-Ohio-904.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-A-0028 |
| WILLIAM M. STROUD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2016 CRB 01565.

Judgment: Affirmed.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Gregory T. Stralka*, 6509 Brecksville Road, P.O. Box 31776, Cleveland, OH 44131 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, William M. Stroud, Sr., appeals his conviction for Sexual Imposition in the Ashtabula Municipal Court. The issues before this court are whether a conviction for Sexual Imposition may be sustained in the absence of direct evidence that the offender knew his conduct would be offensive to the victim and whether trial counsel is constitutionally ineffective for not requesting a jury trial. For the following reasons, we affirm the decision of the court below.

{¶2} On September 8, 2016, a Complaint was filed in Ashtabula Municipal Court charging Stroud with Sexual Imposition, a misdemeanor of the third degree in violation of R.C. 2907.06(A)(1).

**{¶3}** On September 20, 2016, Stroud appeared for arraignment and entered a plea of not guilty.

**{¶4}** On April 11 and May 10, 2017, the matter was tried before a magistrate as acting judge. The following relevant testimony was given:

**{¶5}** Gladis F. Parker testified that she is a resident of Ashtabula Towers in Ashtabula. She has known Stroud for three years as a friend but has never dated him. On the evening of August 18, 2016, she was in the apartment lobby speaking with another resident, Steve Ferrand. Stroud entered the lobby and, as he walked past her, "he stuck his hand between my legs * * * front to back": he "touched my vaginal area up into my rectum and grabbed the cheek of my butt."

**{¶6}** Parker asked Stroud what he was doing and he replied: "First time's free, second time you pay. You know you enjoyed that." Parker advised Stroud that what he did was sexual assault. Stroud apologized and said he was drunk.

**{¶7}** Steven Ferrand testified that he was speaking with Parker when the incident with Stroud occurred. Ferrand observed Stroud grab Parker "on the buttocks" and say, "first time's free, second time you have to pay" and also "you enjoyed it."

**{¶8}** Patrolman Eric Massi of the Ashtabula City Police Department testified that he responded to a dispatch at Ashtabula Towers on August 18, 2016. After speaking with Parker, Massi went to Stroud's apartment and asked him about the incident. Stroud stated that "he might have touched her on the shoulder and said hello to her when he walked by her in the lobby, but that was it." Massi noted that Stroud appeared intoxicated.

**{¶9}** Stroud testified that, at about 5:20 p.m. on the day in question, he entered the lobby of Ashtabula Towers with a coffee mug of iced tea. According to Stroud,

2

Parker was by herself in the hallway area. He tapped her on the shoulder. "When she turned and backed, I had my coffee mug in my hand and she backed into my hand, and at that point, she said, she thought I had grabbed her. * * * I thought she was teasing at that point."

{¶10} Stroud denied having had anything alcoholic to drink at the time of the incident with Parker. By the time he spoke with Patrolman Massi, Stroud had had a few beers.

{¶11} At the conclusion of the trial, the magistrate found Stroud guilty of Sexual Imposition and sentenced him to a suspended 30-day jail sentence, imposed a fine of $150, and ordered him to serve 18 months' probation.

{¶12} On May 12, 2017, Stroud filed a Notice of Appeal. On appeal, Stroud raises the following assignments of error:

{¶13} "[1.] The trial court's decision finding the appellant guilty of sexual imposition is against the manifest weight of the evidence since the State failed to prove the appellant knew the contact would be offensive to the alleged victim."

{¶14} "[2.] The appellant's constitutional right to effective assistance of counsel was violated when such counsel failed to request a jury trial and to proffer testimony necessary for the appellant's defense."

{¶15} Under the first assignment of error, Stroud claims the facts of this case do not establish that he had the requisite mental state to commit the offense of Sexual Imposition.

{¶16} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d

3

541 (1997). A challenge to the weight of the evidence compels a reviewing court to consider "the evidence's effect of inducing belief" and ask, "whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

{¶17} To sustain a conviction for Sexual Imposition, the State must prove that Stroud had "sexual contact" with Parker, when he knew "that the sexual contact is offensive" to Parker, or was "reckless in that regard." R.C. 2907.06(A)(1). In other words, Stroud had to be "aware" that his conduct would "probably be of a certain nature," or, "with heedless indifference to the consequences," to have "disregard[ed] a substantial and unjustifiable risk" that his conduct was "likely to be of a certain nature." R.C. 2901.22(B) and (C).[1]

{¶18} Stroud maintains that, in the absence of "any evidence regarding how the Appellant knew his alleged actions would be offensive to the alleged victim," his conviction "is clearly against the manifest weight of the evidence." Appellant's brief at 6. We disagree. Even in the absence of direct evidence, Stroud's knowledge and/or recklessness with respect to the offensive nature of his conduct is reasonably inferable from the facts of this case.

---

1. In rather more picturesque language, this court has described the Sexual Imposition statute thus: "[T]he statutory emphasis is unequivocally on physical touching of another's body in an unwanted manner and area. This legislation is aimed clearly at conduct that our society has traditionally considered as being 'foul territory'. For this type of activity, in the every day understanding of reasonable citizens, we don't need constitutional umpires or electronic devices to explain what we mean or when we're not in the playing area of the diamond." *State v. Orban*, 11th Dist. Portage No. 1515, 1985 WL 4939, *3 (Dec. 31, 1985).

4

**{¶19}** The evidence before the court, if believed, was that Stroud put his hand between Parker's legs and grabbed her buttocks including her pubic region, Stroud and Parker do not share an intimate relationship, and Parker did nothing that would indicate to Stroud that such contact would be welcomed, desired, or otherwise tolerated. We have no hesitation in finding that one who initiates sexual contact in such circumstances does so with heedless indifference, if not full awareness, that such contact will be offensive. *State v. Martin*, 11th Dist. Ashtabula No. 93-A-1830, 1994 WL 780875, *3 (Dec. 2, 1994) ("when one engages in sexual contact, without permission or consent, * * * one recklessly disregards whether it is offensive") (citation omitted).

**{¶20}** This conclusion is confirmed in the present case by Stroud's own testimony that "as soon as I realized that she really thought I did grab her, I apologized," thus demonstrating his awareness that such conduct would be inappropriate.

**{¶21}** The first assignment of error is without merit.

**{¶22}** Under the second assignment of error, Stroud asserts that trial counsel was constitutionally ineffective for failing to file a jury demand and offer testimony for the defense.

**{¶23}** To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

5

**{¶24}** Stroud's argument is based on the claim that trial counsel "failed to respect the wishes of her client to present the case before a jury and to advance the defense Appellant wanted to put before the court." Appellant's brief at 9.

**{¶25}** At the conclusion of the trial in this case, Stroud protested that counsel had filed a motion for a jury trial with the court and that he was "not being asked the questions that need to be answered for my side of this to be heard out." The magistrate reviewed the court's docket but found no jury demand.

**{¶26}** Stroud has failed to satisfy either prong of the test to demonstrate ineffective assistance of counsel. This court has held that the decision to try a petty offense case to the court rather than a jury lies within the scope of objectively reasonable representation and, without more, "cannot be deemed deficient." *State v. Todaro*, 11th Dist. Ashtabula No. 2004-A-0002, 2005-Ohio-3400, ¶ 36; *State v. Barnett*, 11th Dist. Portage No. 2006-P-0117, 2007-Ohio-4954, ¶ 54 ("failure of counsel to file a jury demand does not per se constitute ineffective assistance of counsel").

**{¶27}** Assuming, arguendo, that the failure to file a jury demand in the present case was the result of professional negligence, Stroud has not demonstrated prejudice as a result thereof, thereby precluding a finding of ineffective assistance. *State v. Fitzgerald*, 9th Dist. Summit No. 22381, 2005-Ohio-2411, ¶ 13 ("merely argu[ing] that he could have had a jury trial had his counsel filed a demand notice * * * fails to establish prejudice"); *State ex rel. Maxwell v. Trikilis*, 9th Dist. Medina No. 06CA0071-M, 2007-Ohio-1355, ¶ 27 ("[w]ith respect to a jury demand, Appellant has failed to demonstrate that the result of his bench trial would have been different but for his counsel's failure to make a jury demand").

**{¶28}** We further note that, if Stroud had wished to object to a bench trial, the issue should have been raised at the beginning of the trial, rather than at its conclusion.

**{¶29}** With respect to trial counsel's failure to advance the defense desired by Stroud, no argument has been presented as to why the trial strategy pursued was ineffective or prejudicial to him. The Ohio Supreme Court has held that the Constitution does not reserve "the selection of trial strategy to the defendant's personal choice," but, rather, such decisions lie "within the exclusive province of defense counsel to make after consultation with his client." (Citation omitted.) *State v. Murphy*, 91 Ohio St.3d 516, 524, 747 N.E.2d 765 (2001); *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150 ("[d]efendants have no constitutional right to determine strategy").

**{¶30}** The second assignment of error is without merit.

**{¶31}** For the foregoing reasons, Stroud's conviction for Sexual Imposition in the Ashtabula Municipal Court is affirmed. Costs to be taxed against the appellant.

CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

7